## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOLDEN WEST REFINING CORP., LTD., <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, <br> And COOPERS & LYBRAND, LLP, <br><br> Defendants. | No.: 3:02CV1379(CFD) |
| ALEC SHARP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, <br> d/b/a PRICE WATERHOUSE, LLP, <br><br> Defendant. | No. 3:02CV1572 (CFD) |

## MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITERS' MOTION TO DISMISS THE COUNTERCLAIMS OF PRICEWATERHOUSECOOPERS

### I.    INTRODUCTION

PricewaterhouseCoopers ("PWC") has asserted two counterclaims in response to the Complaint issued by Plaintiffs Alec Sharp et al. ("Underwriters"). Both counterclaims are based upon a clause in a Coopers and Lybrand L.L.P. engagement letter in which Handy & Harman Refining Group, Inc. ("HHRG") purportedly agreed to indemnify PWC arising out of claims or liabilities in circumstances where there is a misrepresentation by HHRG's management.

This provision cannot support PWC's counterclaim against Underwriters. Underwriters have not agreed to indemnify PWC, nor have they assumed HHRG's liability to do so by virtue

of their subrogated claim or the assignment by HHRG to Underwriters of its claims against

PWC. Thus, this Counterclaim is not properly brought against Underwriters.

In addition, the clause in question does not require that HHRG indemnify PWC for its

own misconduct.    Since the allegations against PWC are for its negligence and/or failure to

perform its contractual obligations, the indemnification clause cannot be a basis for recoupment

or setoff against HHRG.

Thus, this Court should dismiss the counterclaims asserted by PWC against Underwriters

since they fail to state a claim for relief against Underwriters.

## II.    MATERIAL FACTS

The March 30, 1998 engagement letter produced by PWC[1] contains the following

pertinent language:

> The Company hereby indemnifies Coopers & Lybrand L.L.P. and its
> partners, principals, and employees, and holds them harmless from all claims,
> liabilities, losses, and costs arising in circumstances where there has been a
> knowing misrepresentation by a member of the Company's management,
> regardless of whether such person was acting in the Company's interest.

*See* Ex. A.

The "Company" is defined as Handy & Harman Refining Group, Inc.  *See* Ex. A.

Underwriters were not a party to this agreement.  *See Id*.

After paying on the insurance claim asserted by HHRG, Underwriters were

assigned all of HHRG's various claims against the parties which had contributed toward

---

[1] The letter is attached as Exhibit A.  This is a true and correct copy of a letter produced by PWC.  Since this letter is the basis of the PWC counterclaim, it may be considered by this Court, without the need to convert the motion to dismiss into a motion for summary judgment.  *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2nd Cir. 2001) (court considered a cardholder agreement, account history and monthly statements not attached to a complaint); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2nd Cir. 1991) (court considered prospectus not attached to a complaint).  It should be noted that the letter produced was unsigned.  In order to establish that this indemnity provision was even agreed to by HHRG, PWC should be required to produce a signed engagement letter.

causing its claimed loss including PWC. *See* Ex. B. This assignment was supposed to be attached to Plaintiff's Complaint against PWC.[2] It provides in pertinent part:

> HHRG assigns to Underwriters all rights, title and interest in any and all claims which HHRG has, had, or may ever have as to all losses asserted by HHRG in the written claim of 22 February 2000 submitted by HHRG to Underwriters under the Policy, and which were more fully explained in a memorandum submitted to Underwriters on 9 March 2000 and more fully documented in a proof of loss submitted to Underwriters dated 9 October 2000, and which were the subject of claims submitted to Chubb and/or Federal Insurance Company and to Hiscox ("the Losses"), plus interest, costs, and punitive damages arising from the Losses, including but not limited to, any and all such claims against (a) Barry Wayne, Richard L. Searle, Louis Posado, Michael Verleysen, Manuel Seaone, Carlos Augspach, Frank Phillips, Jorge Washington, Erick Claudet, Linneo Klocker, Fernando Limo, Mario Seaone, and Jorge Passaro and their relatives, corporations, affiliates, and assigns; (b) Panexim and any and all employees or agents of Panexim or related entities; (c) SUNAT; (d) The Peruvian Government; (e) PriceWaterhouseCoopers and its predecessors, successors, agents and assigns; (f) Hermes; (g) Alex Stewart Assayers; (h) The Chubb Corporation or Federal Insurance Company and Hiscox.

*See* Ex. B.

Underwriters allege that PWC was engaged as an outside auditor which performed professional auditing services for HHRG. Complaint, paragraph 3. Underwriters further aver that although PWC knew that various transactions were taking place, which were contrary to HHRG policy, PWC never disclosed or reported such transactions to HHRG's board of directors, despite an obligation to do so. *Id*. Underwriters have asserted claims for negligence and breach of contract against PWC. *See* Complaint, generally.

PWC claims that the losses claimed by Underwriters arose in circumstances in which there was a knowing misrepresentation by an officer of HHRG. Counterclaim,

---

[2] Underwriters inadvertently failed to attach the assignment document itself, although its attachment is referenced in the complaint. Underwriters have since filed this assignment document with the court.

- 3 -

paragraph 4. Pursuant to the engagement letter language set forth above, PWC claims that HHRG agreed to indemnify it under circumstances "where there has been a knowing misrepresentation by a member of HHRG management." Ex. A; counterclaim, paragraph 3. This indemnification language is the basis of PWC's counterclaim. *Id.*

## III.    ARGUMENT

Dismissal of a complaint or counterclaim pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted is warranted if it appears beyond doubt that the claimant can prove no set of facts in support of his claim which would entitle him to relief. *Sims v. Artuz*, 230 F.3d 14 (2nd Cir. 2000); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2nd Cir. 1984) ("The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."); *see also Kaltman-Glasel v. Dooley*, 156 F.Supp.2d 225 (D. Conn. 2001) (this court dismissed counterclaim because it failed to state a claim); *Citizens Trust Company v. New England Dredge & Dock Co.*, 260 F.Supp. 800 (D. Conn. 1966) (counterclaim by entity attempting to shift liability away from itself dismissed for failing to state a claim). PWC's counterclaims are deficient as a matter of law, and thus, they must be dismissed.

### A.    PWC's counterclaims cannot be brought against Underwriters.

As the subrogee and assignee of HHRG, Underwriters possessed the rights of HHRG to assert certain claims against PWC, but Underwriters did not assume any obligations of HHRG – including any obligation to indemnify PWC. As such PWC has no valid claim against Underwriters.

729862.1

In its simplest form, subrogation allows a party, such as an insurer who has paid a debt, to step into the shoes of another so as to assume *his or her legal rights* against a third party. *Wasko v. Manella*, 74 Conn.App. 32, 35, 811 A.2d 727 (2002). Since the insurer's right of subrogation against third persons arises out of the contract of insurance, *the insurer can take nothing by subrogation but the rights of the insured. Orselet v. DeMatteo*, 206 Conn. 542, 546, 539 A.3d 95 (1988). A search of Connecticut case law has failed to yield any legal authority which states that a subrogating insurer takes both the rights <u>and the liabilities</u> of its insured.

Meanwhile, the viability of counterclaims like those asserted by PWC has been addressed in Connecticut Courts. These courts have held that counterclaims which might otherwise be asserted against an insured may not be asserted against a subrogated insurer who stands in the shoes of the insured. *See Royal Insurance Co. v. Prudential Residential Services, L.P.*, 2003 Conn.Super. Lexis 372 (February 13, 2003) (attached); *Liberty Mutual Insurance Company v. Luna*, 30 Conn.Supp. 89, 481 A.2d 427 (1984) (Superior Court granted motion to strike counterclaim finding that since there was no allegation that the insurance company had anything to do with the accident, there was no basis for bringing an action against the insurance company.); *see also* 16 G. Couch, Insurance (2d Ed. 1983) § 61:236, p. 296 (qualifying the notion that an insurer stands in the shoes of its insured to exclude an insurer's liability for counterclaims which could be brought against the insured).

Connecticut Courts have drawn a similar conclusion regarding assigned claims as well. *See ICC Performance 2 Limited Partnership v. Pollack*, 1997 Conn.Super.LEXIS 1042 (attached) (granting motion to strike counterclaim on the basis that assignee could not be liable for conduct of assignor); *SCP Corp. v. BankBoston f/k/a Bank of Boston*, 1999 Conn.Super.LEXIS 780 (attached) (granting assignee's motion to strike counterclaim by a

defendant asserting a counterclaim for breaches by the assignor); *see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 2002 U.S.Dist.LEXIS 2596 (D.Conn. 2002) (attached) ("in the absense of an express contract provision, an assignee is not required to assume the original responsibilities of the assignor.").

*Royal Insurance* is directly on point. In that case the counterclaims were premised on a contract between the insured and the defendant. In fact, one of the counterclaims was based upon a claimed obligation of indemnity. Nevertheless, in granting the insurer's motion to strike the counterclaims, the trial court held that since the insurer was not a party to that indemnification contract, the contract could not be enforced against that insurer. The court rejected the notion that the insurer left itself open to a claim by the defendant simply because it assumed the insured's rights to sue the defendant.

The present case is no different. PWC is attempting to enforce a contract it has with HHRG by asserting claims for setoff and recoupment against Underwriters. Since Underwriters were not a party to this contract, Underwriters do not have any obligations to indemnify PWC by virtue of their subrogated or assigned rights. Accordingly, the counterclaims PWC has asserted against Underwriters should be dismissed because the counterclaims do not state claims upon which relief can be granted.

### B.    HHRG did not agree to indemnify PWC for its own misconduct.

The indemnification language at issue is, in any event, insufficient under Connecticut law to allow PWC to be indemnified for its own misconduct. Underwriters' claims against PWC are based upon its negligent performance of its contract with HHRG, or alternatively, its failure to

perform its contractual obligations altogether. Thus, without misconduct on the part of PWC with respect to its obligations to HHRG, PWC will not be liable to Underwriters.

To the extent that PWC is found to be liable to Underwriters, PWC is asserting in its counterclaims that Underwriters has an obligation to indemnify it and that this indemnification should serve as either a setoff or recoupment for any obligation that PWC has to Underwriters. Nevertheless, it is well established in Connecticut that one cannot indemnify itself for one's own misconduct unless the indemnity provision explicitly provides for such indemnity. *Hyson v. White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636, 829 A.2d 827 (2003) (Connecticut Supreme Court concluded that indemnification agreements like releases must contain explicit language whereby the indemnitor indemnifies the indemnitee for its own negligence); *Griffin v. Nationawide Moving & Storage Co.*, 187 Conn. 405, 413, 446 A.2d 799 (1982) ("the law does not favor contract provisions which relieve a person from his own negligence").

Furthermore, to the extent that PWC is found to have breached its engagement, it is not entitled to enforce the indemnity provision against HHRG, or Underwriters. *Bouchard v. Bouchard*, 2001 Conn. Super. LEXIS 803 (attached) ("Under contract law, a material breach by one party discharges the other party's subsequent duty to perform on the contract"); *see also* 2 Restatement (Second), Contracts Section 237, p. 215 (1979) ("It is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.")

It is clear that the indemnity provision in the PWC engagement letter does not contain explicit language whereby HHRG will indemnify PWC for its own negligence. Moreover, it is

clear that before PWC will require indemnification, PWC will have to have been found to have breached the agreement itself either through its non-performance or its negligent performance. As such, since PWC's misconduct is a condition precedent for its entitlement for indemnification under the agreement, and since PWC is not entitled to indemnification for its own negligence or its prior breach of the agreement, PWC cannot state a claim for indemnity through its counterclaims against Underwriters. PWC's counterclaims against Underwriters lack legal sufficiency, and therefore, they must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss the counterclaims asserted by PWC and grant Underwriters any such other and further relief that this Court deems just and equitable.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:

Fred Knopf (Ct-09427)
3 Gannett Drive
White Plains, New York 10604-3407
Phone (914) 323-7000, Ext. 4217
Facsimile (914) 323-7001
Knopff@wemed.com

One Stamford Plaza
263 Tresser Boulevard
9th Floor, Stamford, CT 06901
Tel:  (203) 564-1900

Edward J. Boyle, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
150 E. 42nd Street
New York, NY 10017
Phone: 212-490-3000
Fax: 212-490-3038

729862.1

Daniel J. McMahon, Esq.
Stefan R. Dandelles, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
120 N. LaSalle Street
26th Floor
Chicago, IL 60602
Phone: 312-704-0550
Fax: 312-704-1522

729862.1

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed on June 21 , 2004 postage prepaid to all counsel of record as follows:

David Elliott, Esq.
William H. Erickson, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103

William Champlin, III, Esq.
William S. Fish, Jr., Esq.
Tyler, Cooper & Alcorn
CityPlace –35th Floor
Hartford, CT 06103

Steven Humphrey, Esq.
Dina Fisher, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

_____
Fred N. Knopf, Esq.

- 10 -

729862.1